**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, 1411 K Street N.W., Suite 1300 Washington, D.C. 20005,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>U.S. ARMY CORPS OF ENGINEERS, 441 G Street NW Washington, DC 20314-1000<br><br>　　　　　Defendant. | **COMPLAINT**<br>**FOR DECLARATORY AND**<br>**INJUNCTIVE RELIEF**<br><br>Case No.: _____ |

**INTRODUCTION**

1.　　This action challenges the U.S. Army Corps of Engineers' ("the Corps") failure to produce all records responsive to Plaintiff Center for Biological Diversity's ("the Center") Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, requests relating to an enormous $9.4 billion petrochemical complex proposed at the mouth of the Mississippi River in St. James Parish, Louisiana ("the Formosa Project"). The plant, proposed by a member of the Formosa Plastics Group named FG LA LLC ("FG"), would turn natural gas to polyethylene, polypropylene, and other materials used to manufacture single-use plastics. The Center challenges the Corps' failure to provide records regarding the Corps' consideration of FG's application for permits under the Clean Water Act and other statutes in violation of the FOIA and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06.

2.　　On August 27, 2018, the Corps notified the public concerning FG's application for permits under Section 404 of the Clean Water Act, 33 U.S.C. §§ 1251-1387 ("Section 404

CWA permit") to dredge-and-fill navigable waters in conjunction with the construction of the Formosa Project.

3.     Seeking to understand the bases for the Corps' permitting decisions under these statutes, on September 11, 2018, the Center submitted a FOIA request seeking FG's Section 404 CWA permit application ("the First FOIA Request") for the Formosa Project. On October 16, 2018, the Corps responded by producing some records, and claiming its production was complete.  On December 14, 2018, the Center submitted a second FOIA request seeking all records pertaining to the Section 404 CWA permit process and compliance with  other statutes, including but not limited to agency communications and determinations ("the Second FOIA Request"). The Corps has not provided any records responsive to this request, almost two months after it was submitted.

4.     The records sought concern the extent and nature of the proposed dredge-and-fill activities in the Mississippi River and are of significant public interest. A true and correct copy of the First FOIA Request and the Second FOIA Request are attached.  *See* Attachments A and B.

5.     Although more than 20-working days have passed since the two FOIA requests were submitted, the Corps has failed to perform an adequate search for responsive records and failed to produce all responsive records to the Center.  These failures constitute agency actions that violate FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6), or, in the alternative, constitute agency action unlawfully withheld and/or unreasonably delayed, in violation of the APA, 5 U.S.C. § 706.

6.     To remedy these violations, the Center seeks an order requiring the Corps to search for and produce all records responsive to the Center's September 11, 2018 FOIA request

and December 14, 2018 FOIA requests no later than 20-working days after the date of the Order,

as well as other appropriate relief.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. § 1331 because this action arises under FOIA, and the Declaratory Judgment Act,

28 U.S.C. §§ 2201-2202.

8.      Venue properly vests in this Court pursuant to 5 U.S.C. § 552(a)(4)(B), which

provides venue for FOIA cases in this district.

9.      Declaratory relief is appropriate under 28 U.S.C. § 2201.

10.     Injunctive relief is appropriate under 28 U.S.C. § 2202 and 5 U.S.C. §

552(a)(4)(B).

## PARTIES

11.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit

conservation organization with offices throughout the United States.  The Center has more than

1.4 million members and online activists who care about protecting public health and

safeguarding wild species and their habitats from environmental degradation. The Center and its

members, including members who live in the area that will inevitably be adversely impacted by

the Formosa Project, are gravely concerned about the potential impacts of the project on aquatic

ecosystems, aquatic species, and public health, and about whether FG will take all appropriate

and practicable measures to minimize these potential harms, as is required by law. The Center

and its members are harmed by Defendant's violations of FOIA, which are preventing the Center

from gaining a full understanding of Defendant's activities, priorities, and decision-making.

12.     Defendant U.S. ARMY CORPS OF ENGINEERS is a federal agency within the Department of Defense. The Corps has custody and/or control of the records subject to the Center's FOIA Requests, and subject to FOIA pursuant to 5 U.S.C. § 552(f).

## STATUTORY BACKGROUND

### A.  The Freedom of Information Act

13.     FOIA's basic purpose is government transparency. It establishes the public's right to access all federal agency records with certain narrow exceptions. 5 U.S.C. § 552(b).

14.     FOIA imposes strict and rigorous deadlines on federal agencies when they receive requests for records.  Specifically, an agency must determine whether to disclose responsive records and notify the requester of its determination within 20 working days of receiving a FOIA request, and it must make releasable records "promptly" available.  *Id.* §§ 552(a)(3)(A), (a)(6). Although the statute also provides limited circumstances under which this deadline may be temporarily extended, it does not provide for any extension where the agency has not responded to the requestor at all.  *Id.* § 552(a)(6).  If a requester appeals a FOIA response, the agency must respond to the appeal within twenty working days.  *Id.* § 552(a)(6)(ii).

15.     FOIA requires each agency to make reasonable efforts to search for records in a manner reasonably calculated to locate all records responsive to the FOIA request.  *Id.* § 552(a)(3)(C)-(D).

16.     FOIA requires federal agencies to expeditiously disclose requested records, *see Id.* § 552, and mandates a policy of broad disclosure of government records.  Any inquiry under FOIA brings with it a strong presumption in favor of disclosure.

17.     Congress provided that in certain, limited instances, records may be withheld as exempt from FOIA's broad disclosure mandate, based on nine categories of exemptions.  *Id.* §

552(b).  These exemptions, however, are narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.

18.     FOIA places the burden on the agency to prove that it may withhold responsive records from a requester.  *Id*. § 552(a)(4)(B).

19.     The U.S. district courts have jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *Id*. § 552(a)(4)(B).

20.     Alternatively, an agency's response to a FOIA request is subject to judicial review under the APA, which confers a right of judicial review on any person who is adversely affected by agency action, 5 U.S.C. § 702, and authorizes district courts to compel agency action that is unlawfully withheld or unreasonably delayed.  *Id.* § 706(1).  District courts must set aside any agency action that is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  *Id.* § 706(2)(A).

**B.  <u>The Clean Water Act</u>**

21.     Congress passed the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.,* to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Because solid discharges can result in the destruction of aquatic resources, CWA Section 404 regulates the addition of solid discharges—including "dredged" and "fill" material—into waterbodies. 33 U.S.C. § 1344.

22.     Section 404 allows the Corps to grant permits for the discharge of dredged or filled material into waters of the United States, subject to certain constraints. 33 U.S.C. § 1344(a). Section 404(b) requires the Corps to consider the environmental consequences of every discharge it allows. 33 U.S.C. § 1344(b). The Corps must apply guidelines written by the

Environmental Protection Agency ("EPA") pursuant to § 404(b). See *id.; 40 CFR § 230, et seq.* ("EPA Guidelines").

23.     Under the EPA Guidelines, "no discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem." *Id.* § 230.10(a); *see also id.* § 230.12(a)(3)(i).  In addition, no discharge shall be permitted "which will cause or contribute to significant degradation of the waters of the United States." *Id.* § 230.10(c). The proposed discharge must also "include all appropriate and practicable measures to minimize potential harm to the aquatic ecosystem." *Id.* § 230.12(a)(3)(iii).

## C.   Other Statutes

28.     The National Environmental Policy Act ("NEPA"), enacted in 1970, is our "basic national charter for the protection of the environment." 40 C.F.R. § 1500.1. Recognizing that "each person should enjoy a healthful environment," NEPA ensures that the federal government uses all practicable means to "assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings," and to "attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences," among other policies. 43 U.S.C. § 4331(b).

29.     Because the Formosa Project constitutes a "major Federal action[] significantly affecting the quality of the human environment," NEPA requires that the Corps create an environmental impact statement ("EIS") before issuing a CWA Section 404 or RHAA Section 10 RHAA. 42 U.S.C. § 4332(2)(C).  At minimum, the Corps must initially complete an Environmental Assessment to determine whether an EIS is necessary. 40 C.F.R. §§ 1501.3; 1501.4.

30.     Congress enacted the Endangered Species Act ("ESA") in 1973 to "conserve endangered species and threatened species." 16 U.S.C. § 1531(c)(1). To achieve this goal, ESA Section 7(a)(2) requires that each federal agency consult with the U.S. Fish and Wildlife Service to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species." *Id.* § 1536(a)(2).

31.     To comply with Section 7(a)(2)'s mandate, the Corps must consult with the Fish and Wildlife Service to determine whether the Formosa Project "may affect" a listed species, and if so prepare a Biological Opinion detailing the impacts of the project on protected species, 50 C.F.R. § 402.14(e), utilizing the "best scientific and commercial data available."  16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a).

## FACTUAL BACKGROUND

### A.  The Center's First FOIA Request

32.     Seeking to understand the bases upon which the Corps will consider FG's CWA Section 404 and permit application, on September 11, 2018, the Center submitted a FOIA request to the Corps, *see* Attachment A (First FOIA Request), seeking:

> From January 27, 2018 to August 27, 2018, FG LA LLC's applications for permits under Section 404 of the Clean Water Act, 33 U.S.C. §§ 1251-1387 ("CWA") and Section 10 of the Rivers and Harbors Act, (33 U.S.C. § 403 ("RHA") for the proposed "Sunshine Project" ethane cracker in Formosa, St. James Parish, Louisiana.

33.     On October 16, 2018 the Corps responded to the FOIA Request with a Final Determination Letter stating that the "records responsive to your request were located, reviewed and deemed releasable in their entirety . . . ."  However, although the Corps provided some responsive records, the Corps did not include all of the records responsive to the First FOIA Request.

34.     Accordingly, on January 8, 2019, the Center filed an administrative appeal of the

Corps' failure to provide all responsive records, pursuant to 5 U.S.C. § 552(a)(6).  *See*

Attachment C.  Although more than twenty working days have passed since that appeal was

submitted, the Center has received no response.

   **B.   The Center's Second FOIA Request**

35.     On December 14, 2018, the Center submitted a second FOIA request to the Corps,

seeking, *inter alia*, all records "mentioning, including, and/or referencing" FG's CWA Section

404 and RHAA Section 10 permits.  In particular, the Second FOIA Request seeks:

1.   From August 27, 2018 to the date the Corps conducts this search, the records
generated in connection to FG LA LLC's permit application for Section 404 of the Clean
Water Act, 33 U.S.C. §1344 ("CWA") for the proposed "Sunshine Project" ethane
cracker in Formosa, St. James Parish, Louisiana including but not limited to:

a. Records mentioning, including, and/or referencing the Corps' determination "that
there is no practicable alternative that would have a less adverse effect on the aquatic
ecosystems," pursuant to 40. C.F.R. § 230.10(a);

b. Records mentioning, including, and/or referencing the agency's consideration of
whether the discharges at issue will comply with, or may "violate[] any applicable
toxic effluent standard or prohibition under section 307 of the CWA," pursuant to 40
C.F.R. § 230.10(b)(2).;

c. Records mentioning, including, and/or referencing the "particle size, shape, and
degree of compaction of the material proposed for discharge and the material
constituting the substrate at the disposal site," and the "proposed method, volume,
location, and rate of discharge," pursuant to 40 C.F.R. § 230.11(a);

d. Records mentioning, including, and/or referencing "number of discharge actions
per unit of time" and the proposed contours of the "mixing zone," pursuant to 40 CFR
§ 230.11(f)(1-2);

e. Records mentioning, including, and/or referencing "the shape and size of the plume
of suspended particulates, the duration of discharge and resulting plume," (i.e. records
the Corps will use to reach a determination of "whether or not the potential changes
will cause violations of applicable water quality standards," pursuant to 40 CFR §
230.11(c));

f. Records mentioning, including, and/or referencing the Corps' determination of "the
degree to which the material proposed for discharge will introduce, relocate, or
increase contaminants," pursuant to 40 CFR § 230.11(d); and

g. Records mentioning, including, and/or referencing actions the Applicant proposes to take to minimize adverse environmental impacts, pursuant to 40 C.F.R. §§230.70 – 230.76.

2.    From January 27, 2018 to the date the Corps conducts this search:

a. The records generated in connection with the Section 401 Permit Application, including but not limited to FG LA LLC's permit applications for Section 401 of the CWA for the proposed "Sunshine Project" ethane cracker in Formosa, St. James Parish, Louisiana;

b. The records generated in connection to the Corps' fulfillment of its obligations under the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ("NEPA") in connection with FG LA LL's permit applications for Section 404 and Section 401 of the CWA for the proposed "Sunshine Project" ethane cracker in Formosa, St. James Parish, Louisiana; and

c. Records relating to the Corps' obligations, in regard to the same two permits mentioned above, under the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"), section 7(a)(2) to consult with the U.S. Fish and Wildlife Service ("FWS") or the National Marine Fisheries Service ("NMFS") to "insure that any action authorized, funded, or carried out by such agency…is not likely to jeopardize the continued existence of any endangered species or threatened species." Id. § 1536(a)(2).

36.    *See* Attachment B at pp. 1-2. This request encompasses records that were not necessarily generated by FG but that will nonetheless inform the Corps' decision-making process vis-à-vis the CWA Section 404 permit application. The Corps has not responded to this request to date.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**(Failure to make a timely determination on the Center's Second FOIA Request)**

37.    Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

38.    Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Corps in the foreseeable future.

39.      The Center has a statutory right to a lawful determination from Defendant on its Second FOIA request, in a manner that complies with FOIA. Defendant has violated the Center's rights in this regard by unlawfully delaying their response beyond the deadline that FOIA mandates. 5 U.S.C. § 552(a)(6)(A)(i).

40.      The Center's organizational activities will be adversely affected if Defendant is allowed to continue violating FOIA's deadlines.

41.      Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, Defendant will continue to violate the Center's rights to receive public records under FOIA.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

**(Failure to provide records responsive to the Center's FOIA Requests)**

42.      Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs.

43.      Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Corps in the foreseeable future.

44.      The Center has a statutory right to the records it seeks.  The Corps is violating the FOIA and implementing regulations by refusing to disclose all the records responsive to the Center's FOIA Requests.

45.      The Center's organizational activities will be adversely affected if the Corps continues to violate FOIA's disclosure provisions as it has in this case.

46.      Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Corps will continue to violate the Center's rights to receive public records under FOIA.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

**(Failure to adequately search for records responsive to the Center's FOIA Requests)**

47.     The Center re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

48.     The Center has a statutory right to have the Corps process the FOIA Request in a manner that complies with FOIA.  5 U.S.C. § 552(a)(3).  The Corps is violating the Center's rights in this regard by unlawfully failing to undertake a search reasonably calculated to locate all records that are responsive to the Center's FOIA Request.

49.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Corps in the foreseeable future.

50.     The Center's organizational activities will be adversely affected if the Corps continues to violate FOIA's requirement to undertake a search that is reasonably calculated to locate records that are responsive to their respective FOIA Requests.

51.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Corps will continue to violate the Center's rights to receive public records under FOIA.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

**(Failure to disclose all non-exempt records responsive to the Center's FOIA Requests)**

52.     The Center re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

53.     The Center has a statutory right to the records it seeks.  There is no legal basis for the Corps to assert that any of FOIA's nine exemptions to mandatory disclosure apply to withhold these records from the Center.  See 5 U.S.C. § 552(b)(1)-(9).

54.     To the extent the Corps is invoking any of these exemptions, the Corps is unlawfully withholding from disclosure records that are responsive to the Center's FOIA Request.

55.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the Corps in the foreseeable future.

56.     The Center's organizational activities will be adversely affected if the Corps continues to violate FOIA's disclosure provisions.

57.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the Corps will continue to violate the Center's rights to receive public records under FOIA.

### FIFTH CLAIM FOR RELIEF
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### (In the Alternative to the First Through Fourth Claim)

**(Agency action unlawfully withheld or unreasonably delayed)**

58.     The Center re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

59.     The Corps is unlawfully withholding agency action by failing to comply with the mandates of FOIA as a result of its failure and refusal to search for and disclose records

responsive to the Center's First and Second FOIA Requests. The Corp's failures constitute

agency actions that are unlawfully withheld pursuant to the APA, 5 U.S.C. § 706(1).

60.    Alternatively, the Corps is unreasonably delaying agency action by failing to

comply with the mandates of FOIA as a result of its failure and refusal to search for and disclose

all records responsive to the Center's First FOIA Request and its failure to timely respond to the

Center's Second FOIA Request. The Corps' failures constitute agency action unreasonably

delayed pursuant to the APA, 5 U.S.C. § 706(1).

61.    As alleged above, the Corps' failure to comply with the mandates of FOIA has

injured the Center's interests in public oversight of governmental operations and is in violation

of its statutory duties under the APA.

62.    The Center has suffered a legal wrong as a result of the Corps' failure to comply

with the mandates of FOIA.  As alleged above, the Corps is violating its statutory duties under

the APA and injuring the Center's interests in public oversight of governmental operations.

63.    The Center has no other adequate remedy at law to redress the violations noted

above.

64.    The Center is entitled to judicial review under the APA, 5 U.S.C. § 702.


**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**(In the Alternative to the First Through Fifth Claims)**

**(Arbitrary and capricious agency action)**

65.    The Center re-alleges and incorporates by reference the allegations made in all

preceding paragraphs.

66.     The Corps is violating FOIA's statutory mandates by failing to search for and disclose all records responsive to the Center's FOIA Requests.  By violating FOIA's statutory mandates, the Corps' actions are arbitrary, capricious, an abuse of discretion, or not in accordance with the law pursuant to the APA, 5 U.S.C. § 706(2)(A).

67.     As alleged above, the Corps' failure to comply with the mandates of FOIA has injured the Center's interests in public oversight of governmental operations and is in violation of the agency's statutory duties under the APA.

68.     The Center has suffered a legal wrong as a result of the Corps' failure to comply with the mandates of FOIA.  As alleged above, the Corps is violating their statutory duties under the APA and injuring the Center's interests in public oversight of governmental operations.

69.     The Center has no other adequate remedy at law to redress the violations noted above.

70.     The Center is entitled to judicial review under the APA, 5 U.S.C. § 702.

## **PRAYER FOR RELIEF**

WHEREFORE, the Center prays that this Court:

1.     Order the Defendant to conduct searches reasonably calculated to locate all records responsive to the Center's First FOIA Request and Second FOIA Request, utilizing a cut-off date for such searches that is the date the searches are conducted, and providing the Center, by a date certain, with all responsive records and reasonably segregable portions of lawfully exempt records sought in this action.

2.     Declare the Defendant's failure to timely make a determination on the Center's Second FOIA Request, as alleged above, is unlawful under FOIA, U.S.C. § 552(a)(6)(A)(i), or in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5

U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2).

      3.      Declare that the Defendant's failure to search for and release all records responsive to the Center's FOIA Requests, as alleged above, is unlawful under FOIA, U.S.C. § 552(a)(6)(A)(i), or in the alternative, is an agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

      4.      Award the Center its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412.

      5.      Grant such other and further relief as the Court may deem just and proper.


DATED: February 12, 2019            Respectfully submitted,


                        */s/ Howard M. Crystal*
                        Howard M. Crystal
                        (D.C. Bar No. 446189)
                        CENTER FOR BIOLOGICAL DIVERSITY
                        1411 K Street N.W., Suite 1300
                        Washington, D.C. 20005
                        Telephone:    202-809-6926
                        Email:        hcrystal@biologicaldiversity.org

                        *Attorney for the Center for Biological Diversity*